Jason M. Frank (SBN 190957)
jfrank@lawfss.com
Scott H. Sims (SBN 234148)
ssims@lawfss.com
FRANK SIMS & STOLPER LLP
19800 MacArthur Boulevard, Suite 855
Irvine, California 92612-8444
Telephone:  949-201-2400
Facsimile:   949-201-2405

Franklin D. Azar
  (*Pro Hac Vice to be Filed*)
azarf@fdazar.com
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:  303-757-3300
Facsimile:   720-213-5131

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL FERNANDEZ and BRETT BECKER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE, N.A., d/b/a CAPITAL ONE AUTO FINANCE,<br><br>Defendant. | Case Number:  2:21-cv-2253<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1)   BREACH OF CONTRACT**<br><br>**(2)   VIOLATION OF CALIFORNIA'S BUSINESS & PROFESSIONS CODE SECTION 17200 (THE "UCL")**<br><br>**(3)   DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Krystal Fernandez and Brett Becker ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendant Capital One, N.A., d/b/a Capital One Auto Finance ("Capital One"), based on personal knowledge as to Plaintiffs, and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiffs' counsel.

## INTRODUCTION

1.     This action concerns Capital One's practice of knowingly collecting unearned fees for Guaranteed Automobile Protection Waivers ("GAP Waiver") after the early payoff of a customer's retail installment sales contract (also referred to herein as the "finance agreement").  Capital One knows these fees have not been earned and will never be earned but nevertheless includes them in the payoff amount when the customer pays off their contract early.  Capital One then refuses to refund these unearned GAP fees to its customers, even though Capital One is contractually and legally obligated to do so as the assignee/creditor/lienholder of the finance agreement and GAP Waiver.  As a result of this practice, Capital One knowingly collects and keeps millions in unearned GAP fees from its customers each year.

## FACTUAL BACKGROUND

2.     **What is a Retail Installment Sales Contract?**  Plaintiffs and the Class financed the purchase of their cars by entering into retail installment sales contracts with auto dealers (the "dealers").  Under the agreements, Plaintiffs and the Class agreed to pay for the price of their cars in the future over a fixed period of years, with interest, in monthly installment payments.  The dealers then immediately sold and assigned those contracts to Capital One.  Thereafter, all future payments on the contracts were made directly to Capital One.

3.     **What is the difference between a Retail Installment Sales Contract and a Loan?**  Although similar, a retail installment sales contract (also referred to herein as the "finance agreement") is different from an auto loan.  As the U.S Consumer Financial Protection Bureau explains: "A loan is a transaction between you and a bank or other

lender for money, where you use the money to purchase a vehicle and agree to repay the loan balance plus interest.  A retail installment sale, on the other hand, is a transaction between you and the dealer to purchase a vehicle where you agree to pay the dealer over time, paying both the value of the vehicle plus interest.  A dealer could sell the retail installment sales contract to a lender or other party." (See CFPB, www.consumerfinance.gov/ask-cfpb/what-is-a-retail-installment-sales-contract-or-agreement-is-this-a-loan-en-817/.)  The latter scenario is exactly what happened in the present case.  Plaintiffs and the Class entered into retail installment sales contracts with the dealers, which were then immediately sold and assigned to Capital One.  Thereafter, Capital One became the creditor on the agreements.

4. **What is a GAP Waiver?**  Each of the retail installment sales contracts at issue in this lawsuit included a GAP Waiver.  A GAP Waiver is an addendum to the retail installment sales contract which amends the terms of the contract and becomes a part of



the agreement.  It is a debt cancellation agreement, which provides that in the event a customer suffers a "total loss" of their vehicle and the actual cash value of their vehicle is worth less than the balance owed to the creditor, then the creditor will agree to waive the difference.  This difference is known as the "GAP."

5. For example, assume a customer's car is stolen and the customer still owes $10,000 in payments on their retail installment sales contract.  Also assume the customer's liability insurer only agrees to pay $8,000 for the "total loss" of the vehicle.  Without a GAP Waiver, the customer would still owe the $2,000 difference to Capital One as the creditor on the contract, even though the customer no longer possesses the vehicle.  However, if the retail installment sales contract has a GAP Waiver, then Capital

One is required to "waive" the $2,000 difference.[1]

6.   **How does a customer pay for GAP Coverage?**   Customers pay for GAP coverage in monthly installments over the life of their finance agreement.  The total cost of GAP coverage for the full term of the retail installment sales contract is separately listed on the contract as part of the total amount financed (the "GAP fees").  The retail installment sales contract will also list the total amount of interest that the customer will pay over the full term of the contract (the "finance charge").  However, while the customer is told up-front what the total cost of the GAP coverage and finance charge will be for the full term of the retail installment sales contract, the customer actually pays those amounts incrementally over time to Capital One on a month-to-month basis, which is included in the monthly payments for their car.

7.   **What are Unearned GAP Fees?**   When customers pay off their finance agreements early (before the original maturity date) this results in what Capital One and the rest of the auto finance industry refer to as "unearned GAP fees" and "unearned finance charges."  For example, if the total cost of GAP protection for four years of GAP coverage is $800, but the customer pays off their finance agreement in two years, this results in $400 of "unearned GAP fees" for the unused half of the contract term.  This portion of the GAP fees is "unearned" because once the finance agreement is paid off early, there is no possibility of a GAP and the customer is no longer receiving anything of value by paying for future GAP protection.  Similarly, when the finance agreement is paid off early, the difference between the interest that had accrued up to the date of the early payoff and the total finance charge listed on the contract is known as the "unearned finance charge," because the customer no longer owes interest for the unused term of the agreement.

---

[1]   By structuring the transaction as a "debt cancellation agreement," rather than "insurance," Capital One is able to avoid insurance regulations designed to protect consumers, such as regulations regarding the amount charged for insurance protection and a dealer's ability to offer GAP coverage to customers without an insurance license.

8.      **How is Capital One Collecting and Keeping Unearned GAP Fees?** When a customer wants to pay off their finance agreement early (i.e., before the end of the contract term), Capital One informs the customer of the total payoff amount. Capital One does not include the unearned finance charge in the total payoff amount quoted to customers, but it will include the amount of the unearned GAP fees. In other words, at the time of the early payoff, Capital One fraudulently represents to its customers (including Plaintiffs and the Class) that they owe Capital One the unearned GAP fees for the remaining term of the contract, even though Capital One knows these fees are not earned, and can never be earned, because the finance agreement is terminating early. Capital One then collects and keeps these unearned GAP fees, unless the customer affirmatively requests a refund, which rarely happens. As a result of this practice, Capital One routinely collects and keeps tens of millions of dollars of unearned money *each year* that rightfully belongs to its customers.

9.      **The Early Payoff of the Finance Agreement Automatically Cancels the GAP Waiver Addendum.** As explained above, the GAP Waiver is simply an addendum to the retail installment sales contract and is a part of the agreement. Consequently, the early payoff of the contract results in an *automatic* termination and cancellation of the GAP Waiver addendum.

10.     **Capital One Always Knows Its Customers are Entitled to a Credit or Refund of Unearned GAP Fees When There is an Early Payoff of the Finance Agreement.** Capital One *always* knows when there has been an early payoff of the finance agreement because Capital One, as the creditor, is the entity receiving the early payoff. Likewise, Capital One *always* knows its customers are entitled to a credit or refund of the unearned GAP fees after an early payoff, because Capital One knows that once the retail installment sales contract is terminated early, there is no basis for continuing to charge customers for future GAP coverage. Consequently, there is no legitimate basis for Capital One to include the unearned GAP fees in the early payoff amount quoted to customers, nor is there any legitimate basis to collect such unearned

money from its customers and then refuse to give it back unless the customers affirmatively request a refund.

11.     Capital One perpetuates its scheme to collect and keep unearned GAP fees by advising its customers in early payoff letters that they "may" be entitled to a refund of the unearned GAP fees. Capital One misleadingly conceals and fails to disclose in these payoff letters that: (i) Capital One knows for a fact that the customer is entitled to a refund of the unearned GAP fees; (ii) Capital One knows the exact amount of the refund; and (iii) Capital One knows that it is the entity that is contractually obligated to issue the credit or refund of the unearned GAP fees to the customer.

12.     Capital One breached its contracts with Plaintiffs and the Class Members by failing to refund the unearned GAP fees it collected after Plaintiffs and the Class Members paid off their finance agreements early.

13.     Capital One is continuing its fraudulent, unfair and unlawful practice of including unearned GAP fees in the total payoff amount and refusing to automatically issue a credit or refund of those fees to its customers upon an early payoff.  Plaintiffs intend to enter finance agreements with GAP Waivers in the future which may be assigned to Capital One and are thus at risk of being harmed by this practice in the future, just like the rest of the public.  Thus, Plaintiffs, on behalf of themselves, the Class, and the general public, are seeking:

        a.     An order requiring Capital One to refund all unearned GAP fees it collected after the early payoff of the finance agreement to every customer in the United States;

        b.     An order requiring Capital One to pay the interest that accrued on those delinquent refunds;

        c.     An order requiring Capital One, on a go-forward basis, to either: (i) issue a credit for the unearned GAP fees in the early payoff amount quoted to customers; or (ii) directly refund those unearned fees back to the customer promptly upon the early payoff of the finance agreement; and

CLASS ACTION COMPLAINT

d.  Damages, restitution and all other relief as may be just and proper.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class Member is of diverse citizenship from one of the defendants, there are 100 or more Class Members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

15.     Venue is proper in the Central District of California under 28 U.S.C. § 1391. Capital One regularly conducts business in this District and a substantial part of the events giving rise to the claims asserted herein occurred in the Central District of California.

## THE PLAINTIFFS

16.     Plaintiffs are individuals (a) who entered into a finance agreement with a GAP Waiver addendum that was assigned to Capital One; (b) who paid off their finance agreements to Capital One before the end of the contract term set forth in the finance agreement; and (c) who did not receive a refund of the unearned GAP fees collected by Capital One and/or the accrued interest on those unpaid fees.

17.     At all relevant times, Plaintiff Krystal Fernandez was a citizen of the State of California, and a resident of Los Angeles County, California.  On or about August 24, 2016, Plaintiff Fernandez entered a "Vehicle Purchase Agreement" with Innovative Fund Services ("IFS") whereby she authorized IFS to notify the Avis Budget Group (a dealer) that she was purchasing a 2015 Mazda3.  The terms of the Vehicle Purchase Agreement provided Plaintiff Fernandez would finance the purchase on a 72-month term and that the purchase included GAP protection at a cost of $795.00 for the full term of the contract. In the Vehicle Purchase Agreement, Plaintiff Fernandez further authorized Avis Budget Group and IFS to process the required finance documentation to complete the transaction. On information and belief, the completed finance documentation included a finance agreement and GAP Waiver consistent with the terms of purchase listed in the Vehicle Purchase Agreement.  Plaintiff Fernandez's finance agreement, including the GAP

Waiver, was thereafter purchased by, and assigned to, Capital One. Plaintiff Fernandez paid off her finance agreement early (on or about January 30, 2018) as part of her leasing a new vehicle from Subaru of Glendale. Capital One collected and failed to refund the unearned GAP fees. Capital One received written notice of the early payoff. Calculated on a pro-rata basis, Capital One owes Plaintiff Fernandez approximately $510.00 in unearned GAP fees, excluding interest.

18.     At all relevant times, Plaintiff Brett Becker was a citizen of the State of Minnesota, and a resident of Menahga, Minnesota. Plaintiff Becker purchased a 2014 Chevrolet Malibu Sentra from Thielen Motors Inc. on May 12, 2017. Plaintiff Becker financed the purchase of his car by entering into a finance agreement with a 72-month term. The finance agreement included a GAP Waiver addendum. The amount of the GAP Waiver was $850.00 for the full term of the contract. The finance agreement (including its GAP Waiver addendum) was purchased by and assigned to Capital One shortly after Plaintiff Becker purchased his vehicle. Plaintiff Becker paid off the full balance of his finance agreement by refinancing the original finance agreement with Air Force Federal Credit Union on May 21, 2018, or approximately 12 months after the finance agreement start date. Capital One recorded the pay-off date, in writing, in Capital One's computer records. Capital One also issued a written confirmation letter to Plaintiff Becker confirming that Plaintiff Becker had paid off the amount owed under the finance agreement before the end of the original contract term. Capital One failed to refund Plaintiff Becker his unearned GAP fees. Calculated on a pro-rata basis, Capital One owes Plaintiff Becker approximately $704.91 in unearned GAP fees, excluding interest.

## DEFENDANT

19.     Defendant Capital One, N.A., d/b/a Capital One Auto Finance ("Capital One") is a national association bank chartered in Virginia and headquartered in McLean, Virginia. Capital One is the assignee of the finance agreements of Plaintiffs and the Class Members, including the GAP Waiver addendums to those finance agreements.

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class and Subclasses:

**a.     Nationwide Class**: Plaintiffs seek to represent a nationwide class including all persons: (1) who entered into finance agreements that included GAP Waiver addendums that were assigned to Capital One; (2) who paid off their finance agreements before the end of the contract term; and (3) who did not receive a credit or refund of the unearned GAP fees and/or the accrued interest on those unpaid amounts (the "Nationwide Class"). On behalf of the Nationwide Class, Plaintiffs are asserting claims against Capital One for breach of contract and declaratory relief. The class period is based on the applicable statutes of limitations in each State.

**b.     The California Subclass:** Plaintiff Fernandez is seeking to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to consumers who entered into their applicable finance agreements and GAP Waiver addendums in the State of California (the "California Subclass"). On behalf of the California Subclass, Plaintiff Fernandez is asserting claims against Capital One for breach of contract, violation of California's Business & Professions Code section 17200 (the "UCL"), and declaratory relief. The class period is based on the applicable statutes of limitations.

**c.     The Minnesota Subclass**: Plaintiff Becker is seeking to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to consumers who entered into their applicable finance agreements and GAP Waiver addendums in the State of Minnesota, (the "Minnesota Subclass"). On behalf of the Minnesota Subclass, Plaintiff Becker is asserting claims against Capital One for breach of contract and declaratory relief. The class period is based on the applicable statutes of limitations.

21.     Excluded from the proposed Class and Subclasses are: (a) Defendant and its agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel

representing Plaintiffs and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

22.     Plaintiffs reserve the right to revise the definition of the Class based upon subsequently discovered information.

23.     **Numerosity:** While the exact numbers of the members of the Class and Subclasses are unknown to Plaintiffs at this time, membership in the Class may be ascertained from the records maintained by Capital One.  At this time, Plaintiffs are informed and believe that the Class includes hundreds of thousands, if not millions, of members and each of the Subclasses includes tens of thousands of members.  Therefore, the Class and Subclasses are sufficiently numerous that joinder of all members of the Class and Subclasses in a single action is impracticable under Fed. R. Civ. P 23(a)(1), and the resolution of their claims through a class action will be of benefit to the parties and the Court.

24.     **Ascertainability:** The names and addresses of the members of the Class and Subclasses are contained in Capital One's records.  Notice can be provided to the members of the Class and Subclasses through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under state and federal law.

25.     **Common Facts:** Common facts exist as to all members of the Class and Subclasses and predominate over any issues affecting individual members of the Class and Subclasses.  The common facts include the following:

a.      Plaintiffs and the members of the Class and Subclasses entered into finance agreements including GAP Waiver addendums to finance the purchase of their vehicles.

b.      The finance agreements and GAP Waiver addendums are form contracts approved by Capital One and offered to customers on a take-it-or-leave-it basis.

c.      The finance agreements and GAP Waiver addendums were purchased by and assigned to Capital One.

d.     Every finance agreement entered by Plaintiffs and the members of the Class and Subclasses contained a provision stating that: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof."

e.     Capital One was the assignee and "holder" of every finance agreement and GAP Waiver addendum entered by Plaintiffs and the members of the Class.

f.     The total purchase price for GAP coverage for the full term of the finance agreement was listed as a separate line item on the first page of the finance agreement and included in the total amount financed.

g.     After the assignment to Capital One, Plaintiffs and the members of the Class and Subclasses were required to make all payments under the finance agreements to Capital One with interest including, but not limited to, the monthly payment of GAP fees.

h.     Capital One approved the terms and language of every GAP Waiver form.

i.     Capital One, as the purchaser and assignee of the finance agreement, was the lienholder/creditor of every GAP Waiver addendum entered by Plaintiffs and the members of the Class and Subclasses.

j.     When a GAP Waiver addendum is terminated before the end of the contract term, Capital One, and the auto finance industry, refer to the unused portion of the GAP fees as "unearned fees" or "unearned GAP fees."

k.     Every GAP Waiver form provides that customers have the right to cancel the GAP Waiver at any time and receive a refund of the unearned GAP fees.

l.     Every GAP Waiver is automatically cancelled and terminated when the finance agreement is paid off before the end of the contract term.

m.     Plaintiffs and the members of the Class and Subclasses paid off the balances on their finance agreements early – *i.e.*, before the end of the original contract term.

n.      Capital One received written notice that Plaintiffs and the members of the Class and Subclasses paid off their finance agreements before the end of the original contract terms and thereby cancelled their GAP Waiver addendums early, because (1) these customers paid off their balances through written instruments, *e.g.*, checks, or wires or electronic payments; (2) Capital One recorded the pay-off date, in writing, in Capital One's records; and (3) Capital One issued written confirmation letters to the customers confirming they paid off their respective finance agreements before the end of the original contract terms.

o.      Capital One possessed, and possesses, all of the information necessary to calculate the unearned GAP fees when Plaintiffs and the members of the Class and Subclasses paid off their finance agreements early, including (1) the method for calculating the refund (*e.g.*, the pro-rata method); (2) the total purchase price for GAP coverage for the full term of the contract; (3) the date of the early payoff and resulting cancellation of the agreement; and (4) the amount of time remaining under the original contract term.

p.      Rather than deduct the unearned GAP fees from the total payoff amount, Capital One's common policy and practice throughout the United States is to include the unearned GAP fees in the total payoff amount quoted to customers when they seek to pay off their finance agreements early.

q.      In conformance with its common policy and practice, Capital One included the unearned GAP fees in the total payoff amount quoted to Plaintiffs and the members of the Class and Subclasses.

r.      In conformance with its common policy and practice, Capital One collected unearned GAP fees from Plaintiffs and the members of the Class and Subclasses and did not refund the unearned GAP fees to Plaintiffs and the members of the Class and Subclasses.

s.      Capital One's common policies and practices with respect to GAP Waivers are the same regardless of the language in the GAP Waiver forms.  In other words, Capital One treats all GAP Waiver forms as uniform in its business operations.

26.     **Common Questions of Law:** Common questions of law exist as to all members of the Class and Subclasses and predominate over any issues solely affecting individual members of the Class and Subclasses.  The common questions of law include, but are not limited to:

a.      Whether the early payoff of the finance agreement automatically cancels the GAP Waiver addendum.

b.      Whether Capital One, as the assignee, owes a contractual obligation to the customer to issue a credit or refund of unearned GAP fees.

c.      Whether Capital One owes the interest that accrued on the unpaid refund amounts.

d.      Whether Capital One's actual notice that the finance agreements have been paid off early is sufficient to trigger Capital One's credit and refund obligations under the GAP Waivers.

e.      Whether the payment of the final payoff amount constitutes written notice to Capital One that the finance agreement has been paid off early, if any such notice is required.

f.      Whether Capital One's records of the final payoff date and Capital One's payoff confirmation letters constitute sufficient written notice to Capital One under any applicable notice provision that the finance agreements have been paid off early thereby entitling Plaintiffs and the members of the Class and Subclasses to a refund of their unearned GAP fees.

g.      Whether Plaintiffs and the members of the Class and Subclasses "substantially complied" with any purported notice requirements in the GAP Waiver addendums by providing notice to the party with the refund obligation (Capital One) that the finance agreements have been paid off early.

h.      Whether it would be unjust to conclude that Plaintiffs and the members of the Class and Subclasses forfeited their right to a refund of the unearned GAP fees as a result of technical deviations from any purported notice requirement in the GAP Waivers, especially where, as here, the party with the refund obligation (Capital One) received actual notice.

i.      Whether it would be unconscionable to conclude that Plaintiffs and the members of the Class and Subclasses forfeited their right to a refund of the unearned GAP fees as a result of technical deviations from any purported notice provision in the GAP Waivers, especially where, as here, the party with the refund obligation (Capital One) received actual notice.

j.      Whether the knowledge of the administrator for any GAP Waiver form is imputed to Capital One, and vice-versa.

k.      Whether a contractual provision, if any, requiring Plaintiffs and the members of the Class and Subclasses to send a subsequent written notice that the finance agreement has been paid off early as a condition precedent to a refund is enforceable, when the party with the refund obligation (Capital One) already knows the finance agreement has been paid off early.

l.      Whether any interpretation by Capital One of any notice provisions as a condition precedent requiring strict compliance would result in a disproportionate forfeiture of unearned GAP fees after an early payoff.

m.      Whether Capital One's practice of including unearned GAP fees in the early payoff amount quoted to customers is an unfair, fraudulent or unlawful business practice under the UCL.

n.      Whether Capital One's practice of denying its refund obligations is an unfair, fraudulent or unlawful business practice under the UCL.

o.      Whether Capital One's payoff confirmation letter is deceptive and misleading in violation of the UCL.

p.      Whether Plaintiffs and the members of the Class and Subclasses are entitled to damages and restitution in the amount of the unearned GAP fees, as well as the accrued interest on those unpaid amounts.

q.      Whether Plaintiffs and the members of the Class and Subclasses are entitled to an award of reasonable attorneys' fees and costs.

r.      Whether the Court should issue a public injunction requiring Capital One to either: (1) refrain from including unearned GAP fees in the total payoff amount quoted to customers; or (2) automatically refund those unearned fees back to the customer promptly upon the early payoff of the finance agreement.

27.    **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses.  Plaintiffs have been subjected to the same wrongful business practices and have been damaged in the same manner.  Specifically, Capital One included unearned GAP fees in the total payoff amount quoted to Plaintiffs and then proceeded to collect those unearned GAP fees without issuing a credit or refund to Plaintiffs, nor paying interest on the delinquent amounts.

28.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate representatives of the Class and Subclasses because they do not have any interests which are adverse to the interests of the members of the Class and Subclasses. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

29.    Plaintiffs' interests are co-extensive with, and not antagonistic to, those of the absent members of the Class and Subclasses.  Plaintiffs will undertake to represent and protect the interests of the absent members of the Class and Subclasses.

30.    Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex consumer class action litigation, will adequately prosecute this

action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of the Class and Subclasses.

31.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Fed. R. Civ. P. 23(b)(3) because: (1) the class members do not have an interest in individually controlling the prosecution of separate actions; (2) there is no pending litigation concerning the controversy already begun by class members; (3) it is desirable to concentrate the litigation of the claims in this particular forum; and (4) there will be no difficulties in managing this case as a class action. The superiority requirement is satisfied because a class action here would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

32.    **Predominance:** Class action status is warranted under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the members of the Class and Subclasses predominate over any questions affecting only individual members.  The interests of the members of the Class and Subclasses in individually controlling the prosecution of separate actions are theoretical and not practical.  Prosecution of this action through multiple Class Representatives would be superior to individual lawsuits. Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**FIRST CLAIM**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class and Subclasses)**

33.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

34.    Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclasses.

35.     Plaintiffs and the members of the Class and Subclasses entered into finance agreements including GAP Waivers with various automobile dealerships who then assigned these agreements to Capital One.

36.     After Capital One purchased the finance agreements with GAP Waivers, the only two contracting parties to the GAP Waiver were Plaintiffs and the members of the Class and Subclasses, on the one hand, and Capital One, on the other hand.

37.     The GAP Waiver addendums provide that the creditor on the agreement (which, after the assignment, is Capital One) will issue a credit or refund of unearned GAP fees if the GAP Waiver is cancelled before the end of the original contract term, so long as the creditor (Capital One) has not been required to waive any GAP amounts under the agreement.

38.     Plaintiffs and the members of the Class and Subclasses paid off the finance agreements early, which resulted in the automatic cancellation and termination of the GAP Waiver addendum before the end of the original contract term.

39.     At the time of the early payoff, Capital One included the unearned GAP fees in the total payoff amount quoted to Plaintiffs and the members of the Class and Subclasses.

40.     Plaintiffs and the members of the Class and Subclasses paid the total payoff amount to Capital One, including the unearned GAP fees.

41.     Plaintiffs and the members of the Class and Subclasses provided written notice to Capital One that they were cancelling and terminating the GAP Waiver by paying off the finance agreement early (i.e., prior to the end of the original contract term).

42.     Plaintiffs and the members of the Class and Subclasses actually and/or substantially complied with all of their contractual obligations under the GAP Waivers, including, but not limited to, any purported written notice requirements.

43.     In breach of the finance agreements and GAP Waiver addendums, Capital One wrongfully collected the unearned GAP fees upon the early payoff of the finance

agreements and failed to refund those amounts to Plaintiffs and the members of the Class and Subclasses as required under the GAP Waiver addendums.

44.     Plaintiffs and the members of the Class and Subclasses were harmed, suffered out-of-pocket loss, and did not receive the benefit of their bargains because Capital One failed to issue a credit or refund of the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

45.     Capital One is liable to Plaintiffs and the members of the Class and Subclasses for the damages they suffered as a direct result of Capital One's collection and failure to promptly issue a credit or refund of the unearned GAP fees, as well as the interest that accrued on those unpaid amounts.

46.     Because Capital One received actual notice of the early payoff, allowing Capital One to keep these unearned GAP fees would result in a disproportionate forfeiture.  Plaintiffs and the members of the Class and Subclasses cannot currently obtain a refund of these amounts.

**SECOND CLAIM**
**VIOLATION OF CALIFORNIA'S BUSINESS & PROFESSIONS CODE SECTION 17200 (THE "UCL")**
**(On Behalf of Plaintiff Fernandez and the California Subclass)**

47.     Plaintiff Fernandez hereby repeats, realleges and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

48.     Plaintiff Fernandez brings this claim for violation of California Business & Professions Code section 17200 *et seq.* (the "UCL") on behalf of herself and the members of the California Subclass.

49.     The UCL prohibits acts of "unfair competition" including any unfair, fraudulent or unlawful business practices.

50.     Capital One violated the UCL by wrongly including the unearned GAP fees in the total payoff amount, and Plaintiff Fernandez, in reliance on that representation, paid the unearned GAP fees to Capital One.  Capital One then wrongfully refused to

acknowledge its refund obligation and its liability under the UCL and the Federal Trade Commission's "holder rule" for such amounts.  These practices are likely to and actually did mislead Plaintiff Fernandez and other reasonable consumers into paying unearned GAP fees to Capital One and failing to seek a refund of such fees from Capital One.

51.     Capital One's practice of including unearned GAP fees in the total payoff amount quoted to customers and then collecting and failing to refund unearned GAP fees after the early payoff of the finance agreement is an "unfair" business practice proscribed by the UCL.  There is no reasonable the basis for Capital One including unearned GAP fees in the total payoff amount quoted to customers and to then collect and fail to refund fees that Capital One knows are not earned and will never be earned.  Further, there is no legitimate basis to require customers to send a subsequent written notice to Capital One or its agents that the finance agreement has been paid off early as a condition precedent for the refund, when the party with the refund obligation (Capital One) already knows the finance agreement has been paid off early.  This practice is substantially injurious to consumers and has allowed Capital One to be unjustly enriched at the consumers' expense.  This substantial injury is not outweighed by any countervailing benefits to customers or competition.

52.     Capital One's inclusion of unearned GAP fees in the total payoff amount quoted is a "fraudulent" business practice under the UCL in that it is likely to deceive a reasonable consumer and did, in fact, deceive Plaintiff Fernandez and the members of the California Subclass, into paying money to Capital One that Capital One did not earn and could never be earned.  Capital One's refusal to acknowledge its obligation to refund the unearned GAP fees in its payoff letters, and its liability under the "holder rule" for such amounts, is a "fraudulent" business practice under the UCL in that it is tantamount to an incorrect and misleading assertion that no claims for refunds may be brought against Capital One.  Likewise, Capital One's practice of informing customers in its payoff letters that they "may" be entitled to a refund of the unearned GAP fees when Capital One knows customers are, in fact, entitled to a refund of the unearned GAP fees from Capital One

when the finance agreement is paid off early, and knows the amount of the refund, is a "fraudulent" business practice under the UCL, because it is likely to deceive and deter a reasonable consumer from seeking such refunds from Capital One.

53.     As a direct and proximate result of Capital One's violations of the UCL, Plaintiff Fernandez and each of the members of the California Subclass have been injured in fact and suffered lost money or property in that Capital One collected and failed to refund their unearned GAP fees after the early payoff of their finance agreements.

54.     Pursuant to section 17203 of the UCL, Plaintiff Fernandez and the members of the California Subclass, are seeking restitution of all unearned GAP fees that Capital One failed to refund after the early payoff of their finance agreements, with accrued interest on the unpaid amounts.  Plaintiff Fernandez seeks such restitution for violations of the UCL under an alternative legal theory, not as an alternative remedy.  That is, pursuant to Fed. R. Civ. P. 8, Plaintiff Fernandez alleges alternatively and/or hypothetically, that Capital One has engaged in unfair and fraudulent business practices in violation of the UCL even if (a) the contracts of Plaintiff Fernandez and/or any members of the California Subclass contain enforceable conditions precedent requiring written notice of cancellation to Capital One as a "condition precedent" to a credit or refund of the unearned GAP fees; and (b) Plaintiff Fernandez and/or any members of the California Subclass did not comply[2] with such conditions precedent.  In that alternative and/or hypothetical world, Plaintiff Fernandez and the members of the California Subclass have no adequate monetary remedy at law for Capital One's violations of the UCL.

55.     Plaintiff Fernandez and the members of the California Subclass are further seeking an order pursuant to the UCL enjoining Capital One from including unearned GAP fees in the total payoff amount quoted to customers.  Without such an order, there is a continuing threat to Plaintiff Fernandez and the members of the California Subclass,

---

[2]  The phrase "comply" includes substantial compliance to the extent substantial compliance is legally sufficient, as contended by Plaintiffs.

as well as to members of the general public, that Capital One will continue to improperly include unearned GAP fees in the total payoff amount quoted to customers.  Absent an injunction, Plaintiff Fernandez and other California Subclass Members will suffer an informational injury in that they will be unable to trust or rely on the validity of the information contained in Capital One's total payoff amount quotes.  Although monetary relief in the form of restitution or damages may ultimately remedy future collections of unearned GAP fees by Capital One, there is no adequate remedy at law for that informational injury.  In the absence of an injunction enjoining Capital One from including unearned GAP fees in the total payoff amount quoted to customers, Plaintiff Fernandez and the members of the California Subclass will suffer an irreparable informational injury.  Plaintiff Fernandez intends to enter into finance agreements with GAP Waivers in the future, and thus remains at risk of being harmed in the future by Capital One's fraudulent, unfair and unlawful practices, especially since Plaintiff Fernandez cannot control whether a future finance agreement will be assigned to Capital One.

**THIRD CLAIM**
**DECLARATORY RELIEF**
**(On Behalf of Plaintiffs and the Class and Subclasses)**

56. Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

57. There exists a present controversy between the parties as to the following issues:

a. Whether Capital One, as the assignee, owes a contractual obligation to the customer under the GAP Waiver addendums to refund unearned GAP fees when the finance agreement has been paid off early.

b. Whether Capital One is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

58. Plaintiffs and the members of the Class contend Capital One owes these

obligations.

59.     Accordingly, Plaintiffs and the members of the Class hereby request the Court issue an order declaring that:

a.     Capital One, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

b.     Capital One is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Capital One in favor of Plaintiffs and the members of the Class and Subclasses and award the following relief:

1. An order certifying this lawsuit as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representatives of the Class and Subclasses, and appointing Plaintiffs' counsel as Class Counsel for the Class and Subclasses;

2. An order declaring the following:

   a. Capital One, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

   b. Capital One is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

3. An injunction requiring that Capital One either: (1) refrain from collecting unearned GAP fees upon an early payoff of the finance agreement, either directly by the customer, or indirectly from the refinancing entity in the event the customer refinances the vehicle; or (2) automatically refund those unearned

fees, plus interest, back to the customer promptly upon the early payoff of the finance agreement, either directly by the customer, or indirectly from the refinancing entity in the event the customer refinances the vehicle;

4. An award to Plaintiffs and the members of the Class and Subclasses of all appropriate relief, including actual damages, restitution and disgorgement of the unearned GAP fees;

5. An award of all costs for prosecuting the litigation, including expert fees;

6. An award of pre- and post-judgment interest;

7. An award of attorneys' fees; and

8. An order granting any such additional relief as this Court may deem just and proper.

Dated:       March 12, 2021          FRANK SIMS & STOLPER LLP

By: _/s/ Jason M. Frank_____
Jason M. Frank
Andrew D. Stolper
Scott H. Sims
*Attorneys for Plaintiffs*


FRANKLIN D. AZAR & ASSOCIATES, P.C.

By: _/s/ Franklin D. Azar_____
Franklin D. Azar (*Pro Hac Vice to be Filed*)
*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all claims in this action.

Dated:        March 12, 2021          FRANK SIMS & STOLPER LLP

                                      By:   */s/ Jason M. Frank*
                                      Jason M. Frank
                                      Andrew D. Stolper
                                      Scott H. Sims
                                      *Attorneys for Plaintiffs*


                                      FRANKLIN D. AZAR & ASSOCIATES, P.C.

                                      By:   */s/ Franklin D. Azar*
                                      Franklin D. Azar (*Pro Hac Vice to be Filed*)
                                      *Attorneys for Plaintiffs*